UNITED STATES ex rel. MARELIA v. BURKE.

No. 10675.

United States Court of Appeals Third Circuit.

Argued April 10, 1952.

Decided July 2, 1952.

Elkins Wetherill, Philadelphia, Pa., for appellant.

Thomas M. Reed, Philadelphia, Pa. (Richardson Dilworth, Dist. Atty., Samuel Dash, Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and GOODRICH and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

Joseph Marelia, imprisoned by the Commonwealth of Pennsylvania in 1946 after trial, conviction, and sentence for attempted robbery, has appealed to this court from the dismissal of his petition for a writ of habeas corpus addressed to the District Court for the Eastern District of Pennsylvania after exhausting his state remedies. See United States ex rel. Marelia v. Burke, D.C.E.D.Pa.1951, 101 F.Supp. 615; Commonwealth of Pennsylvania ex rel. Marelia v. Burke, 1950, 366 Pa. 124, 75 A.2d 593, certiorari denied, 1951, 341 U.S. 911, 71 S.Ct. 616, 95 L.Ed. 1348. Of the numerous reasons advanced before the court below in support of his claim of being deprived of liberty without having been accorded due process of law under the Fourteenth Amendment, only one has been assigned as grounds for reversal on this appeal. Nevertheless we have examined the record in its entirety and are satisfied that the careful and detailed opinion of the district court correctly disposes of those contentions not specially urged on appeal. But, because of doubts engendered on oral argument in respect to Marelia's allegations concerning representation by counsel, we deem it advisable briefly to recapitulate the decisive elements of that phase of the case before proceeding to the principal question argued before this court.

Marelia begins his complaint about representation with a claim that he was held incommunicado from the time of his arrest on the evening of March 13, 1946, until the time he was committed to the Philadelphia County Prison on the afternoon of March 18, 1946, and that he was thereby deprived of any opportunity to secure counsel and prepare an adequate defense prior to his trial which was held on the morning of March 22, 1946, before the Quarter Sessions Court of Philadelphia County. The record of the hearings held before the court below, however, does not support these allegations. Three of the police officials who were responsible for Marelia's detention prior to his commitment categorically deny that he was held incommunicado. And, as pointed out by the court below, "[T]he one person with whom relator might reasonably have communicated, his landlady, was notified by police of his arrest almost immediately after it happened." United States ex rel. Marelia v. Burke, supra, 101 F.Supp. at page 618.

Secondly, Marelia asserts that against his wishes a public defender was selected by the court to represent him at the trial, and that requests for a continuance made by him and his court-appointed counsel in order to have time to prepare his defense were summarily denied by the court. But again, the record does not substantiate these allegations. The notes of testimony at the trial itself contain no reference to any objection by Marelia at having a voluntary public defender assigned to represent him or to any motion for a postponement having been taken. The court-appointed attorney testified at hearings held by the court below that, although he had no independent recollection of the facts in question, "when a defendant said he didn't want the services of the Voluntary Defender, I had no hesitance in so saying to the Court, and they either proceeded without the services or appointed someone else", that it was the invariable policy of his office to determine by an examination of the defendant prior to commencement of the trial whether or not a continuance should be requested, that "generally" he was "always accorded a continuance" when he felt it was needed, and, finally, that neither the notes he took at the trial nor the résumé he wrote of it afterwards revealed any request having been made for a continuance.

Lastly, Marelia claimed that the voluntary defender failed properly to represent him at the trial in that the latter did not consult with him about his case prior to trial and refused to talk with him during the trial. Still again, the record stands devoid of supporting evidence. It shows rather that the defender was an experienced attorney whose cross-examination demonstrated, as noted by the district court, "an obvious knowledge of details surrounding the case which he could not have known without consultation with prisoner". Ibid., 101 F.Supp. at page 618.

Thus, in respect to each of the foregoing allegations concerning his representation by counsel, petitioner has clearly failed to establish the factual foundation essential to his constitutional contentions. We proceed, therefore, to the question principally argued on this appeal, one in respect to which the facts are not in dispute.

During Marelia's trial, the Court of Quarter Sessions charged the jury in the following language:

"He is assumed to be innocent until proven guilty beyond a reasonable doubt, *such a reasonable doubt as I've defined to you many times before.*" (Italics added).

It is with the italicized portion of this quotation that the petitioner takes issue.

No objection to it, however, was voiced at the time it was delivered, though at that time both Marelia and his defender were present in court. In these circumstances we think it sophistical to argue, as petitioner does, that because the trial judge in his charge incorporated by reference a definition of reasonable doubt submitted to the jury on some other occasion Marelia was not present at this stage of his trial. Candid and more realistic is the position of the Commonwealth that error was committed at the trial in the defendant's presence. The question is whether due process requires that error to be corrected now in a collateral proceeding.

No appeal was taken from the conviction. Yet it is undisputed that objection and appeal were open to Marelia and that Pennsylvania law required that the erroneous charge be corrected by the trial judge or by reversal on direct appeal as distinguished from habeas corpus proceedings. Id., 101 F.Supp. at page 619 et seq. Thus, Marelia is forced to take the position that the failure of the trial judge to deliver to the jury during his trial a complete charge on the standard of persuasion requisite to a verdict of criminal guilt was, irrespective of his opportunity to request it or to appeal from the denial of such request, so violative of fundamental concepts of fairness and justice as to constitute a denial of due process.

The district court concluded that the Pennsylvania procedure requiring a defendant to attack such error in the jury charge by objection at the trial or by way of assignment of error and appeal rather than by writ of habeas corpus conformed to fundamental notions of fairness. We agree, noting particularly that the jury was charged in part that Marelia must be assumed "innocent until proven guilty beyond a reasonable doubt". If the trial judge had stopped there he would certainly have discharged any constitutional obligation, for this test is all but universally employed and is as easily understood, without embellishment, by a jury as by a court. See 9 Wigmore, Evidence, § 2497 (3rd ed. 1940), and cases cited therein. Consequently, the possibility of injury to the defendant in this regard must depend on the improbability that in his earlier definitions of reasonable doubt to the jury the trial judge perverted the ordinary connotation of these words and that such extraordinary version was retained by the jury at Marelia's trial. We think it takes more than such improbability to cause an error in a charge, not challenged in regular course, to destroy the constitutionality of conviction.

The judgment will be affirmed.

BIGGS, Chief Judge (concurring).

I concur in all the majority opinion has said. However, I would expressly limit the application of the Wigmore rule [see 9 Wigmore, Evidence, § 2497 (3rd ed. 1940)] as to the sufficiency of the charge to the circumstances of this particular case.